CITY OF NASHVILLE *v.* NASHVILLE TRACTION Co. *et al.*

(*Nashville.* December Term, 1919.)

1. **DAMAGES.** Whether the amount specified in a bond is penalty does not depend on the particular words.

   In determining whether the amount specified in a bond for performance is a penalty or liquidated damages, the particular words are not conclusive on the parties or the court. (*Post, pp.* 478-481.)

2. **DAMAGES.** Provision in bond given by traction company for construction of line held a penalty.

   Where a traction company, pursuant to an ordinance granting a franchise to construct and operate a street car line, executed a bond in the penalty of $200,000 to secure the city against any accident which might happen from use of electricity and for construction of the line, the bond requiring definite expenditures within fixed dates, the bond, in view of the fact that it contained a number of stipulations of varied degrees of importance and a single sum was payable for any breach, regardless of the importance of the convenants, must be deemed penal, and the city cannot recover without proof of special damage. (*Post, pp.* 478-481.)

3. **DAMAGES.** Sum disproportioned to damage is penalty.

   Where stipulated sum contained in a bond was out of the proportion of the damage sustained, it will be treated as a penalty. (*Post, p.* 481.)

   Cases cited and approved: Coal Creek Co. v. Tennessee Coal, etc., Co. 106 Tenn., 651; Schrimpf v. Tennessee Mfg. Co., 86 Tenn., 219; Tennessee Mfg. Co. v. James, 91 Tenn., 154; Railroad v. Cabinet Co., 104 Tenn., 568; Vaulx v. Buntin, 127 Tenn., 118.

4. **DAMAGES.** Bond by traction company for construction of line held penal, though given to municipality.

   Where a traction company, under a franchise to construct lines on particular streets, executed a bond for $200,000 to secure the

municipality against loss from use of electricity, and also to procure the company's compliance with the regulation requiring stipulated expenditures within fixed time, the bond must be treated as penal, notwithstanding the rule that the bond given to secure performance of public work for the benefit of a municipality will be treated as liquidated damages, because of the difficulty of ascertaining the damage; the city in this case not taking the bond purely in a governmental capacity, but to protect itself against claims in its corporate capacity. (*Post*, *p.* 481.)

Cases cited and approved: Clark v. Barnard, 108 U. S., 436; Salem v. Anson, 40 Or., 339; Nilson v. Jonesboro, 57 Ark., 168; City of Indianola v. Gulf Western, etc., R. Co., 56 Tex., 594; Madison v. American Sanitary Engineering Co., 118 Wis., 480; Brunswick v. Aetna Indemnity Co., 4 Ga. App., 722; Summit v. Morris County Traction Co., 85 N. J. Law, 193.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —HON. JAS B. NEWMAN, Chancellor.

A. G. EWING, JR., City Attorney, and J. W. MOORE, Assistant City Attorney, for appellant.

VERTREES & VERTREES and CHERRY & STEGER, for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court.

By an ordinance approved in May, 1913, the city council of Nashville granted to defendant Nashville Traction Company a franchise to construct and operate a street car line through certain of the streets of said city. This ordinance was enacted subject to the approval of the voters of the city to be expressed at an election thereafter to be held. Said election was held legally, it was supposed, and the defendant Nashville

Traction Company constructed part of the line proposed. The line was not completed, however, work was abandoned for reasons not necessary to be detailed, and in 1916 the city authorities declared the franchise of defendant traction company forfeited.

By section 14 of the ordinance of 1913 a certain bond was exacted from defendant traction company. The language of the ordinance respecting said bond is as follows:

"That said company shall execute to the city, within ninety days from the final passage of this ordinance by the city council and before the same has been voted upon by the voters of the city of Nashville, a bond with approved, sufficient and undoubtedly solvent sureties, in the penalty of $200,000, and conditioned as follows:

"First, to secure the city against any accident that may happen from the use of electricity in the streets, or in the construction of the said company's road, or operation thereof; and,

"Second, that within six months from the ratification of this ordinance by the voters of the city of Nashville said company shall begin the active work of constructing its street railway lines and power plants and shall diligently and faithfully and continuously prosecute the the same, and shall within eighteen months from the date of the ratification of said ordinance by the voters of the city of Nashville expend and contract for grading, equipment, etc., $250,000, and within 2 years $500,000."

As required by this ordinance a bond was executed by defendant Nashville Traction Company, as principal, and defendant Equitable Surety Company, as surety, in the penal sum of $200,000. The bond was conditioned

as required by the said section 14 of the ordinance, and contained other provisions indicating that it was intended also to secure compliance by the traction company with the provisions of the entire ordinance. The whole ordinance was quite lengthy and set out the duties and obligations of the traction company in much detail.

The bill avers that only $165,000 was expended altogether by defendant traction company in this work, and that defendant traction company abandoned the work and failed to complete it, and the bill is filed to recover the full sum of $200,000 named as penalty of the bond.

An answer was filed by the defendants, raising various questions. The chancellor dismissed the bill, and the city has appealed.

Other facts appear in the record which we need not set out. We rest our decision of this case upon one ground alone, and will undertake to state only such things as are necessary in this immediate connection.

No special damages are alleged in the bill or proven by the city. The city insists that it is relieved from this obligation, inasmuch as it contends that the bond provides for liquidated damages and no proof of special damages is required. The defendants on the contrary, insist that the bond is one for a penalty, given as security for damages suffered by the city, and that only such damage as is proven may be recovered. We are of opinion that the defendants' contention is well taken, and that this is a penal bond, and that there can be no recovery herein in the absence of any showing by the city of any damage sustained.

The language employed in the bond indicates that it was intended to be a penal bond. We concede, however, that the particular words used are not conclusive upon the parties or the court, and we look further to determine the character of this paper.

The narrowest scope to which this bond can be confined is within the limits of section 14 of the ordinance of 1913. The conditions of the bond prescribed in that section, which conditions are contained in the bond executed, are for the security of the city against any accident that may happen from the use of electricity in the streets, or in the construction or operation of the road, or against the failure of the company to begin and faithfully prosecute the work of construction and expend $250,000 on this work within eighteen months from the date of the ratification of said ordinance by the voters, and $500,000 within two years from said ratification of said ordinance.

If the bond be treated as an undertaking to secure the performance of all the requirements of the ordinance granting this franchise to the Nashville Traction Company, then, of course, it has a much broader scope and covers many more things.

In either case the bond covers a contract between the city and the traction company, which embraces several distinct undertakings. In its narrowest scope the bond undertakes to secure the city against damages arising from the use of electricity in the streets, or in the operation of the line, or in the construction of the line, and to secure the expenditure of $250,000 within eighteen months from ratification of the ordi-

nance, and $500,000 within two years from ratification of the ordinance.

Under the terms of this bond the defendant traction company and defendant surety company are liable in the full sum of $200,000 for a breach of the contract in any of the particulars named. The single lump sum of $200,000 is made payable for any breach of the contract, regardless of the importance of the particular stipulation that may be breached. For instance, if the company spent a few dollars less than $500,000 on the work within the time prescribed, $200,000 might be recovered on the bond. If a few days more than the prescribed time were occupied in expending the $500,000, $200,000 might be recovered on the bond. Likewise for any failure of the defendant traction company to secure the city against any claim for damages occasioned by the use of electricity in the streets, in the operation of the road, or in the construction thereof, $200,000 might be recovered, regardless of the amount of the claim and the city's damages.

Under circumstances like these the bond must be treated as one for a penalty. It cannot be supposed that the parties intended to liquidate or stipulate the sum of $200,000 as the amount of damage recoverable upon every such breach, regardless of its importance.

The courts almost uniformly hold where a contract contains a number of stipulations of varying degrees of importance and a single sum is made payable for any breach, applicable alike to important and unimportant covenants, it will be treated as a penalty rather than liquidated damages, no matter what name is given it by the parties. Cases to this effect are too

numerous to be cited.   They will be found collected in
17 C. J., p. 953;   8 R. C. L., p. 571; note, Ann. Cas.,
1912C, 1024; note, L. R. A., 1915E, 373; note, 108 Am.
St. Rep. 56;   Sutherland on Damages, section 294;
Pomeroy, Eq. Juris, section 441.

This rule is of particular force where the damage
incident to the breach of some of the covenants is
readily ascertainable, as would be the damage claims
against the city secured by this bond.

While the rule stated has not hitherto been applied
in any of our reported cases, it must necessarily ob-
tain here to preserve the harmony of our decisions.
Another rule would permit the recovery of the full
amount of the bond for a trifling breach, and this
court invariably treats as a penalty a stipulated sum
out of proportion, to the damage sustained. *Coal
Creek Co.* v. *Tennessee Coal, etc., Co.,* 106 Tenn., 651,
62 S. W., 162; *Schrimpf* v. *Tennessee Mfg. Co·,* 86
Tenn., 219, 6 S. W., 131, 6 Am. St. Rep., 832; *Tennessee
Mfg. Co.* v. *James,* 91 Tenn., 154, 18 S. W., 262, 15
L. R. A., 211, 30 Am. St. Rep., 865; *Railroad* v.
*Cabinet Co.,* 104 Tenn., 568, 58 S. W., 303, 50 L. R. A.
729, 78 Am. St. Rep., 933; *Vaulx* v. *Buntin,* 127 Tenn.,
118, 153 S. W., 481.

We are referred by counsel for the city to certain
cases which take a distinction between bonds given to
an individual and those given to a State of municipality
to secure the performance of a contract for some
public work.   It is said in these cases that the State or
city itself really sustains no damage; the loss is that of
its citizens who failed to get the new railroad or car line;
that such damage is difficult of calulation; and that

31—142 Tenn.]

the payment of the sum specified in the bond will be enforced as a sort of statutory penalty for nonperformance of a duty enjoined by law· *Clark* v. *Barnard,* 108 U. S., 436, 2 Sup. Ct., 878, 27 L. Ed., 780; *Salem* v. *Anson,* 40 Or., 339, 67 Pac., 190, 56 L. R. A., 169, 91 Am. St. Rep., 485; *Nilson* v. *Jonesboro,* 57 Ark., 168, 20 S. W., 1093; *City of Indianola* v. *Gulf, Western, etc., R. Co.,* 56 Tex., 594.

There are other cases to the same effect. In so far as they commend themselves, they treat of bonds conditioned upon the performance of a single undertaking, as the completion of a railroad of other public improvement.

. The bond before us, however, covers numerous things, as we have seen, and in such cases the courts have applied the same rule to a municipal obligee as to an individual. *Madison* v. *American Sanitary Engineering Co.,* 118 Wis., 480, 95 N. W., 1097; *Brunswick* v. *Ætna Indemnity Co.,* 4 Ga. App., 722, 62 S. E., 475; *Summit* v. *Morris County Traction Co.,* 85 N. J. Law, 193, 88 Atl., 1048, L. R. A., 1915E, 385.

Indeed, in this case the city did not take this bond as a mere arm of the government to secure this public improvement for its citizens, but the bond was taken in part to protect the city against claims for damages, to which it would have to respond purely in its corporate capacity. In so far as the city is concerned as a corporation, we see no reason for distinguishing between its rights and those of an individual obligee, and we quite agree with the supreme court of Wisconsin that where a bond is given to secure various covenants, conditions, and agreements of the principal

contract, some of them trivial, a "penal sum" named cannot be treated as liqudated damages for some covenants and a penalty only as to others. *Madison v. American Sanitary Engineering Co.,* supra.

Without discussing other questions, the decree of the Chancellor will be affirmed.