854

CITY OF SPRINGFIELD, a Municipal Corporation, Appellant, v. CHARLES RAY BROWN and the AMERICAN BONDING COMPANY OF BALTIMORE, Respondents, No. 45012—289 S. W. (2d) 48.

Division One, April 9, 1956.

*Gerald W. Gleason* for appellant.

*Frank C. Mann, Mann, Mann, Walter & Powell* and *E. H. McCoy* for respondent American Bonding Company.

[48] HOLMAN, C.—In this action plaintiff sought to recover the full penalty of $10,000 specified in the official bond given by Charles Ray Brown, as principal, with the American Bonding Company of Baltimore, as surety. The defendants filed separate but identical motions to dismiss which were sustained by the trial court. From the judgment dismissing the cause plaintiff has duly appealed.

At the time of the occurrence of the events hereafter related the plaintiff was a city of the second class and was operating under the provisions of Chapter 75 (all statutory references are to RSMo 1949, V.A.M.S.) with a commission form of government. It is alleged in the petition that defendant Brown was elected Commissioner of Streets and Public Improvements on April 4, 1950. The instant bond was given in compliance with Section 75.490 which provided that ''each commissioner shall give bond to the city in the sum of ten thousand dollars, or such larger sum as may be required by ordinance, for the faithful performance of the duties of his office, and the commissioner of the department of revenue shall give bond in such larger sum as is herein provided.'' The condition of the bond given was that the principal would ''well and faithfully perform all and singular the duties incumbent upon him by reason of his election or appointment as aforesaid, and honestly account for all moneys coming into his hands according to law.''

Defendant Brown took the required oath and assumed the duties of the office on April 17, 1950, and remained in office until May 12, 1953, when a new council was sworn in under the provisions of a constitutional charter which had apparently been [49] adopted by the voters of the City of Springfield.

The legislative body of a city operating under Chapter 75 is a council consisting of the mayor and four commissioners. Section 75.090. In addition to his legislative duties defendant Brown was the officer in charge of the streets, public grounds and other public property of the city. Section 75.450.

The breach of the conditions of the bond of which plaintiff complains in the petition relates to the legislative duties of Mr. Brown. It is alleged that said defendant, ''in the performance of his official duties as a member of the City Council of the City of Springfield, Missouri, did on or about the 18th day of June, 1951, cast his 'aye' vote to authorize the Mayor to execute the City of Springfield's contract

dated June 18, 1951, with the engineering firm of Russell & Axon of St. Louis, Missouri, for a survey of the city's sanitary sewage system, and that the said defendant, Charles Ray Brown, did thereafter on or about the 5th day of June, 1952, wilfully, unlawfully and feloniously accept from one James H. Warren, attorney and agent of the aforesaid firm of Russell & Axon, a payment in the amount of $1,000 made in consideration of his favorable vote cast as aforesaid." It is further alleged that as a consequence of said acts Brown was indicted and convicted of bribery and sentenced to serve a term of two years in the State Penitentiary and that the said judgment of conviction was affirmed by this court. State v. Brown, 364 Mo. 759, 267 S. W. 2d 682. There is no allegation that plaintiff sustained any financial loss by reason of the aforementioned conduct of said defendant.

Defendants' motions to dismiss are based upon the following grounds, "(1) the petition fails to state a claim upon which relief can be granted; (2) the bond sued upon is an indemnity bond, as distinguished from a penal bond and is, therefore, not a bond under which a forfeiture for the entire principal of the bond could be declared because of the alleged acts or omissions of the principal, Charles Ray Brown; and (3) the alleged acts and omissions of this defendant, Charles Ray Brown, principal in the bond sued upon, which are alleged to constitute grounds upon which a forfeiture of the bond may be declared, do not constitute a breach of the conditions of the bond or a failure on the part of defendant Charles Ray Brown to faithfully perform the duties of his office."

The parties agree that the sole question for our determination is whether the instant bond is one of forfeiture or of indemnity. Plaintiff frankly concedes that if the bond is one of indemnity the city is not entitled to recover upon the petition herein. This appears to be the first case in this state in which the contention has been made that the bond of a public official is a penal or forfeiture bond. Indeed, it is said that there is only one reported case in the United States in which such a recovery was sought. See Annotation in 4 A.L.R. 2d 1348. That case is State ex rel. v. Overturff, 239 Iowa 1039, 33 N. W. 2d 405, which we will hereafter discuss.

As we have indicated plaintiff contends that it is entitled to recover the entire amount of the bond under an allegation that the defendant Brown failed to faithfully perform the duties of his office in the foregoing respects, without regard to any loss sustained. The principal case plaintiff relies upon is State v. Wipke, 345 Mo. 283, 133 S. W. 2d 354. That case involved the bond given by a licensee for the sale of liquor by the drink under what is now Section 311.090. The statute required a bond conditioned upon "the faithful performance of all the requirements of this law." Defendant violated certain provisions of the Liquor Control Act and it was held that the State could recover the full penalty of the bond.

It should be noted, however, that in State v. Vienup, 347 Mo. 382, 147 S. W. 2d 627, this court held that a bond given by a licensee to sell liquor in the original package, under Section 311.230, was an indemnity bond. That statute provided that said bond require that the licensee "keep at all [50] times an orderly house, and that he will not sell, give away or otherwise dispose of, or suffer the same to be done about his premises, any intoxicating liquor in any quantity to any minor, and conditioned that he will not violate any of the provisions of this law and that he will pay all taxes, inspection and license fees provided for in this chapter, together with all fines, penalties and forfeitures which may be adjudged against him under the provisions of this law."

We have concluded that neither of the foregoing cases are of much help to us in the solution of the problem here presented. This, for the reason that they do not deal with bonds of public officials. On the contrary they involve the highly, regulated liquor traffic wherein it is often considered necessary to invoke various penalties in order to obtain compliance with the many laws and regulations which control that industry.

For reasons that will hereafter briefly appear, we have decided that the legislature, in the enactment of Section 75.490, intended to provide that the commissioners give an indemnity bond rather than a forfeiture or penal bond.

It will be noted that Section 75.490 provides that each commissioner give a bond in the sum of $10,000 "or such larger sum as may be required by ordinance." If this bond was intended to provide a penalty for the failure of said official to faithfully perform the duties of his office, is it reasonable that the council be permitted to fix the maximum amount thereof? If so, the result would be that the punishment of a commissioner for malfeasance or nonfeasance in office might be $10,000 in Springfield while a similar official might forfeit $50,000 in Joplin for the same misconduct.

It should be further noted that under the provisions of Sections 75.490 and 93.390 the minimum bond of the commissioner of revenue is fixed at twenty-five per cent of the estimated annual gross revenues of the city. It is said that at the time in question the bond of this official exceeded one million dollars. If the contention of plaintiff is upheld, it would follow that if the commissioner of revenue had been convicted of this act of taking a bribe (and assuming that such was a breach of the conditions of the bond), the plaintiff could have recovered the sum of one million dollars as a forfeiture for such misconduct, which would clearly have been an unreasonable penalty.

Plaintiff argues that the bond required of commissioners by Section 75.490 relates to their legislative duties, and that such is penal, while commissioners whose duties require them to handle city funds are required by Sections 75.590 and 93.390 to give a separate, special, in-

demnity bond to cover that phase of their duties. We see no reasonable basis for this construction of the applicable statutes and accordingly rule that this contention is without merit.

Moreover, if the bond of public officials is held to be penal in nature, we anticipate that great practical difficulties would be encountered in determining the degree of malfeasance or nonfeasance required for forfeiture. It would be impossible for officials or sureties to reasonably determine the probability of liability. For example, would the bond of a commissioner be forfeited if, without a reasonable excuse, he failed to attend a meeting of the council, or, would he forfeit $10,000 or more if he neglected his duties for a week or perhaps a month, or would forfeiture result from a minor act of malfeasance? All of these examples and the matters discussed in the foregoing paragraphs should clearly demonstrate that the legislature must have intended to provide for an indemnity bond.

It appears to be generally accepted that prosecution under the criminal laws and ouster proceedings are adequate provisions for punishing officers found guilty of misconduct or neglect in office. The official bond is for the purpose of indemnifying those suffering loss or injury by reason of such official malfeasance or nonfeasance. We are supported in our views by the case of State ex rel. v. Overturff, supra, which held that the bond of a sheriff was [51] an indemnity bond and was not subject to forfeiture for malfeasance in office.

Plaintiff makes no contention that recovery may be had, in any event, for nominal damages and, in fact, its brief seems to disclaim any desire for a ruling on that question. Therefore, we will not consider that possibility, nor will we decide whether the alleged act of defendant Brown would constitute a breach of this bond even if it were construed to be a penal or forfeiture bond.

The judgment is affirmed. *Van Osdol* and *Coil, CC.*, concur.

PER CURIAM:—The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court. All the judges concur.